**JIM WALTER HOMES, INC., Appellant,**

v.

**Joe Cruz CASTILLO, Appellee.**

**No. 1774.**

Court of Civil Appeals of Texas, Corpus Christi.

Feb. 12, 1981.

Rehearing Denied May 21, 1981.

Danny Van Winkle, Vinson & Elkins, Houston, for appellant.

Mills Latham, Law Offices of Latham & Patterson, Corpus Christi, Hector Gonzalez, Law Offices of Hector Gonzalez, Sinton, for appellee.

## OPINION

NYE, Chief Justice.

This is an appeal by Jim Walter Homes, Inc., appellant-defendant, from a judgment in favor of Joe Cruz Castillo, appellee-plaintiff, for violations of the Texas Deceptive Trade Practices—Consumer Protection Act, Tex.Bus. & Com. Code Ann. § 17.41 *et seq.* (Supp.1980) [hereinafter "DTPA"] and the Texas Consumer Credit Code, Tex.Rev.Civ. Stat.Ann. art. 5069—1.01 *et seq.* [hereinafter "Credit Code"]. Suit was originally

brought by plaintiff asserting a cause of action against defendant for alleged violations of the DTPA and Credit Code. The jury found violations under both, and the trial court entered its judgment in accordance with the jury's findings. Jim Walter Homes, Inc., appeals.

On February 8, 1974, plaintiff entered into a contract with a representative of defendant. The contract provided for defendant to construct a new house on plaintiffs' unencumbered property in Fort Bend County, Texas. The cash price of the house was $12,895.00, plus a finance charge of $14,015.00, for a total sale price of $26,810.00. To secure payment of the debt, defendant required plaintiffs to release a first lien on the house.

During construction of the house, plaintiffs noticed several problems in the manner of construction, but were told by defendant's representatives that the problems would be cured. Plaintiffs moved into the house during June or July 1974. Approximately nine months to a year after moving into the house, plaintiff began to notice construction defects such as floors cracking, doors not shutting properly, and warped drawers. Upon noticing these defects, plaintiff began to complain extensively to defendant, and subsequently filed this lawsuit on December 1, 1978. This date is four years and ten months after the original contract was signed, and four years and six months after plaintiff complained about the construction, and three years and six months after the defects began showing up in the house.

■ Causes of action under the Credit Code are controlled by Article 5069—8.04, Tex.Rev.Civ.Stat.Ann., which provides as follows:

" . . . Such actions may be brought within four years from the date of the loan or retail installment transaction or within two years from the date of the occurrence of the violation, whichever is later. . . . "

Since this lawsuit was filed almost five years after the date of the loan or retail installment transaction, it does not fall within the permissible time limits provided

for in the Credit Code. Plaintiff contends, however, that since defendant had retained a lien on the house, the violation was continuing and the suit was timely filed within two years from the date of the occurrence of the violation.

This same argument was confronted and rejected in *Jim Walter Homes, Inc. v. Smith*, 592 S.W.2d 670 (Tex.Civ.App.—Beaumont 1979, writ ref'd n.r.e.). The Beaumont court was faced with a lawsuit filed under the Credit Code on July 19, 1978. The contract was entered into on July 17, 1973. The suit was certainly not filed within four years of the contract. The court was faced with the 1973 version of Article 5069—8.04, which said "or two years from the date of the final entry made thereon. . . ." instead of "or within two years from the date of the occurrence of the violation. . . ." They rejected the above argument and held that the continuing violation theory is unreasonable which would give the plaintiffs seventeen years to bring their lawsuit. The Credit Code cause of action was held barred.

If we were to agree with plaintiffs' contention that the "occurrence of the violation was continuing as long as the first lien remained on the property, we would find that this lawsuit could be maintainable from May, 1974, when the lien arose, until April, 1991, two years after the final payment was made. This result would be unreasonable, so the continuing violation theory cannot be accepted. Accordingly, we hold that the Credit Code cause of action is barred by limitations.

■ Next, we turn to the cause of action under the DTPA. The jury found that defendant, through his Mechanic's Lien Contract, represented that the house would be built in a good, substantial, and workmanlike manner. The jury further found that this representation was false and the plaintiff was adversely affected by such representation. The trial court entered judgment in accordance with the jury findings.

Defendant argues that it was error for the trial court to enter judgment for violations under the DTPA, because any claim by plaintiff under this act was barred by the statute of limitations. As decided this same day by this Court in *Jim Walter Homes v. Chapa*, 614 S.W.2d 838 (Tex.Civ. App.—Corpus Christi 1981), the four-year limitations in Article 5527, Tex.Rev.Civ. Stat.Ann. (1958) applies to this type of action. For a full discussion of this question, refer to the above-mentioned opinion.

In determining when the four-year limitation period begins to run, we must determine whether the "discovery rule" applies to this type of action. Both parties agree that the application of the discovery rule to a case under the DTPA is one of first impression; however, the rules governing when the statute of limitations begin are quite settled.

In fraud, the rule is set out in *Quinn v. Press*, 137 Tex. 60, 140 S.W.2d 438, 440 (1941) as follows:

"... the statute of limitations begins to run from the time the fraud is discovered, or could have been discovered by the defrauded party by the exercise of reasonable diligence."

See also *Polk Terrace, Inc. v. Curtis*, 422 S.W.2d 603 (Tex.Civ.App.—Dallas 1967, writ ref'd n.r.e.).

In a case alleging a breach of implied warranty, the rule is set out in *Richman v. Watel*, 565 S.W.2d 101, 102 (Tex.Civ.App.— Waco 1978, writ ref'd n.r.e.) as follows:

"Limitation (here the four year statute) commences on the breach of implied warranty when the buyer discovers or should discover the injury."

And the often quoted language of *Atkins v. Crosland*, 417 S.W.2d 150, 158 (Tex.Sup. 1967), sets out the following guidelines:

"The test to determine when the statute of limitations begins to run against an action sounding in tort is whether the act causing the damage does or does not of itself constitute a legal injury, that is, an injury giving rise to a cause of action because it is an invasion of some right of plaintiff. If the act is of itself not un-lawful in this sense, and plaintiff sues to recover damages subsequently accruing from, and consequent on, the act, the cause of action accrues, and the statute begins to run, when, and only when, the damages are sustained and this is true although at the time the act is done it is apparent that injury will inevitably result."

█  In the case at bar, we must determine whether the act (here representations) was of itself unlawful or not. If the act was not unlawful, the cause of action accrues when the damages are sustained. *Atkins v. Crosland*, supra. Here the representation that the construction was to be in a good and workmanlike manner was not unlawful in and of itself. The statement only became unlawful when the damage occurred. Before plaintiff discovered that the house was not built in a good, substantial, and workmanlike manner, he had no cause of action; therefore, we hold that the discovery rule applies to the case at bar.

Our next key question is whether plaintiff Castillo discovered the defects during construction of the house, around June, 1974, or whether the defects were discovered when he noticed cracks in the floor, etc., in March of 1975. In the latter case, the cause of action would not be barred by the limitations.

In *Polk Terrace, Inc. v. Curtis*, 422 S.W.2d 603 (Tex.Civ.App.—Dallas 1967, writ ref'd n.r.e.), the court found that the limitation had run on facts similar to those at bar. The facts showed that plaintiffs bought a house on June 1, 1959. Beginning in 1960, numerous defects were found in the house, such as cracking driveway, bricks pulling loose, etc. In the fall of 1965, plaintiff finally hired an expert to investigate, and suit was filed immediately thereafter. The lawsuit was for an oral representation màde concerning the quality of the house's foundation. It was filed over five years after the first problems were noticed in the house. Plaintiffs, however, asserted that they did not discover the defect until they hired an expert to investigate the problems.

The *Polk Terrace* court disagreed, saying that the fraud "could have been discovered by the defrauded party by the exercise of reasonable diligence" more than two years before the lawsuit was filed. Therefore, the lawsuit was barred by the statute of limitations.

In the present case, the cracks and other defects in the house did not begin to appear until nine months to a year after the house was occupied. If the limitation period began at that time, then the DTPA action would not be barred. To begin the limitation period at the time when the defendant suggests would be to impose an unreasonable burden upon the plaintiff. At the time construction was going on, plaintiff, a non-expert in the construction business, would have had no way of determining whether such irregularities would ultimately produce defects in a completed house. Therefore, the time period for limitation begins to run when the damages actually began to show on the completed house. Since, in the present case, this period is undisputed to be within the four years allowed under the limitations of Article 5527, Tex.Rev.Civ.Stat.Ann., the cause of action under the DTPA for appellee was not barred.

Defendant next complains that the trial court failed to submit several additional elements such as materiality and reliance as an issue to the jury, even though such elements are not in the text of the DTPA. This point has been thoroughly discussed by this Court in *Jim Walter Homes v. Chapa*, 614 S.W.2d 838 (Tex.Civ.App.—Corpus Christi 1981), handed down on this day. These points are overruled with reference to this companion case.

Appellant Jim Walter Homes also raises no-evidence and insufficient-evidence points. In deciding no-evidence points, we must consider only the evidence and the inferences tending to support the findings and disregard all evidence and inferences to the contrary. *Garza v. Alviar*, 395 S.W.2d 821 (Tex.Sup.1965). When deciding insufficient-evidence points, we must consider and weigh all the evidence, including any evidence contrary to the trial court's judgment. *In Re King's Estate*, 244 S.W.2d 660 (Tex.Sup.1951). See also, *Burnett v. Motyka*, 610 S.W.2d 735 (Tex.Sup.1980).

Plaintiff testified that defendant's salesman had come to his home in 1974. Plaintiff, after deciding on a house he could afford, signed a building contract. On this same date, February 8, 1974, plaintiff also signed a Mechanic's Lien Contract, giving defendant a first lien on the home. The contract provided that defendant would construct the home in a good, substantial, and workmanlike manner.

During the trial, plaintiff called George Clower, an architect, to testify as to whether the house was built in a good, substantial, workmanlike manner. Extensive testimony was given by Mr. Clower regarding defects and problems in the foundation, floor, doors, roof, plumbing, interior and exterior. Mr. Clower's testimony was rebutted by Engineering Professor Dr. Ned Burns.

It is the province of the jury to resolve any contradictions or inconsistencies in the testimony and to judge the credibility of the witnesses and the weight to be given their testimony. *Johnson v. Buck*, 540 S.W.2d 393 (Tex.Civ.App.—Corpus Christi 1976 writ ref'd n.r.e.). This Court may not pass upon the credibility of witnesses or substitute its findings for those of the trier of fact. *Burchfield v. Tanner*, 178 S.W.2d 681 (Tex.Sup.1944). With the preceding rules in mind, we hold that there was sufficient evidence to sustain the jury's findings. Defendant's points of error regarding the sufficiency of the evidence are overruled.

Defendant also contends on appeal that the jury used the wrong measure of damages in arriving at its verdict. The issue submitted to the jury on damages used the remedial cost as the measure of damages. Defendant asserts that the correct measure to be submitted to the jury is the difference between the house as constructed and its value had it been constructed according to contract.

The usual consideration in deciding which measure of damages to use is the economic feasibility of correcting the defects or bringing the house into compliance with the contract. Where the correction of defects and deviations would impair the entire structure or require the expenditure of sums in excess of the value of the structure, the correct measure of damages is the difference in the value of the structure as constructed and its value had it been constructed without defects or deviations. *Hutson v. Chambless*, 300 S.W.2d 943 (Tex.Sup.1957). Where the correction of defects and deviations would not impair the structure as a whole, the remedial cost is an appropriate measure of damages. *Rogowicz v. Taylor and Gray, Inc.*, 498 S.W.2d 352 (Tex.Civ.App.—Tyler 1973, writ ref'd n.r. e.); *Drury v. Reeves*, 539 S.W.2d 390 (Tex. Civ.App.—Austin 1976, no writ).

Applying the general rule, plaintiff is entitled to the remedial cost or difference in value, whichever is less. Therefore, plaintiff had an election of which measure to plead and prove. He chose the remedial measure. If defendant was dissatisfied with the remedial cost measure of damages, he had the duty to show there was no difference in the value of the house as contracted for and as received, or that the difference was less than the remedial cost. *Greene v. Bearden Enterprises, Inc.*, 598 S.W.2d 649 (Tex.Civ.App. —Fort Worth 1980, writ ref'd n.r.e.). Defendant's measure of damages point of error is overruled. All of the remaining points of error have been considered and we find them without merit.

The judgment of the trial court on the Credit Code alleged violation is reversed and judgment is here rendered that plaintiffs take nothing because it is barred by the statute of limitations. That portion of the judgment based upon defendant's violations of the DTPA is affirmed in all respects. The costs of this appeal are assessed one-half to each party.

AFFIRMED IN PART and REVERSED AND RENDERED IN PART.